PEOPLE *ex rel.* HAYES *v.* McLEAN *et al.*

(*Supreme Court, Special Term; New York County.* October, 1890.)

1. ELECTIONS AND VOTERS—APPOINTMENT OF INSPECTORS—MANDAMUS.

A peremptory writ of. *mandamus* will be granted to require the police board to recognize the County Democracy of the city and county of New York in the appointment of inspectors of election, where it appears that for several years the County Democracy has been recognized by the state committee of that party, and allowed one-half of the entire representation; Laws N. Y. 1887, c. 490, § 1, providing that the board of police shall "select to serve as inspectors of election, four persons, (two of whom, on state issues, shall be of different political faith and opinion from their associates, and those appointed to represent the party in political minority as on state issues.) "

2. SAME—ADDITIONAL INSPECTOR.

Under the provision of said section 1, that "if any political party or organization shall have cast for its candidate for any office as many as 50,000 votes or upwards, and the said board of police shall determine that said political party or organization is not entitled to the appointment of at least one of such inspectors, * * * then it shall be the duty of said board of police to appoint in each election district" an additional inspector who shall be a member of such party, a party which has never cast any votes is not entitled to representation.

At chambers. Application by John Hayes and. Joseph E. Newberger for *mandamus* to Charles F. McLean and others, individually and as police commissioners of the city of New York, and as the board of police of said city, to appoint certain inspectors of election from the members of the County Democracy. Relators filed the following petition:

"Your petitioners respectfully show to the court by Foster & Ackley, their attorneys:

"*First.* Your petitioners are citizens and tax-payers of the city of New York, and are a committee of the County Democracy of the city and county of New York, appointed for the purpose of securing due representation of the said County Democracy and Democratic voters in affiliation with it in the appointment of election inspectors for each election district in said city.

"*Second.* That said County Democracy, for more than nine years last past, has been, and still is, a political Democratic organization in the city and county of New York. During all said time said County Democracy has supported and still supports the candidates of the Democratic party for state offices, and has participated by its delegates in the state conventions of said party; and during all said time said County Democracy has always supported the candidates of the Democratic party of this state, and at the last state election supported the candidates of the Democratic party for state offices in this city, and at all said times was and still is a regular publicly recognized constituent part of the Democratic party of the state of New York.

"*Third.* The respondents, Charles F. McLean, James J. Martin, John McClave, and John R. Voorhis, are, and since a time prior to August 1, 1890, have been, police commissioners of the city of New York.

"*Fourth.* The Laws of 1882, c. 410, § 1850, as amended by the Laws of 1887, c. 490, § 1, provides as follows: 'All inspectors of election and poll-clerks in the city and county of New York shall hereafter be selected and appointed by the board of police, who shall also have power to make all necessary removals and transfers, and fill all vacancies which may from any cause arise. It shall be the duty of said board of police, annually, in the months of August and September in each succeeding year, for each election district in said city and county to select to serve as inspector of election four persons, (two of whom, on state issues, shall be of different political faith and opinion from their associates, and those appointed to represent the party in political minority on state issues in the said city and county to be named solely by such commissioner or such commissioners of police in said board as are the representatives of such political minority. And if at the next preceding municipal election any political party or organization shall have cast for its candidates for any

office as many as fifty thousand votes or upwards, and the said board of police shall determine that said political party or organization is not entitled to the appointment of at least one of such inspectors in each election district to represent it, then it shall be the duty of said board of police to appoint for each election district in said city and county one further and additional inspector of election of the political party, and an enrolled member of the organization thereof, and the inspectors of election appointed to represent said political party or organization shall be appointed solely by such commissioner or such of the commissioners of the police in said board as the chairman and secretary of the organization of said political party in said city shall designate.)'

"*Fifth.* During said times another political organization has existed and still exists in the city and county of New York claiming to be a constituent part of the Democratic party in this state and county, by the name of ' Tammany Hall.'

"*Sixth.* By the rules and practice of the conventions of the Democratic party in this state during the past ten years, the representatives of the city and county of New York in the state and national conventions, and the state and national committees, have been equally divided between the County Democracy and Tammany Hall.

"*Seventh.* In the year 1879 the general term for this court for the first department, at its September term, directed that the police board in the said city of New York should appoint one inspector of election for each election district in said city from the members of Tammany Hall; the said police board having previously appointed one inspector for each election district from the members of the other political organization claiming to represent the Democratic party in said city and county. At that time said Tammany Hall did not support, but opposed, the regular nominee of the Democratic state convention for the office of governor of this state.

"*Eighth.* Ever since the year 1879 the said police board has given a practical construction to said statute, and followed and observed an uniform custom of appointing one such inspector of elections for each election district from the members of the County Democracy, and one such inspector from the members of Tammany Hall, and thus dividing the election inspectors appointed to represent the Democratic party in said city equally between the said political organizations.

"*Ninth.* On or about August 1, 1890, the said County Democracy duly requested said police board, in accordance with its usual custom, to appoint from the members of the County Democracy one inspector of elections from each election district in said city. Said police board has never complied with nor acted upon said request.

"*Tenth.* On information and belief that on or about September 16, 1890, on behalf of said County Democracy and as its representatives, Messrs. James J. Martin and John R. Voorhis of said police board, and on or about September said representatives of the County Democracy called upon Mr. Charles F. McLean of said police board, and at said times asked said police commissioners if they intended to recognize the County Democracy in the appointment of Democratic inspectors of election, poll-clerks, and ballot-clerks for the year 1890, or to consider the names of those in affiliation with the New York County Democracy submitted to them by members of said organization as nominees for such offices.

"*Eleventh.* To said request said commissioners Voorhis and Martin replied that they were not prepared to say what they would do, and that no appointments would probably be made until after the meeting of the Democratic state committee, and the said commissioner McLean declined to make any answer to such request.

"*Twelfth.* On or about September 19, 1890; the said County Democracy addressed and presented the following communication to said board of police:

"'HEAD-QUARTERS COUNTY DEMOCRACY, COOPER UNION.

"'*To the Honorable Board of Police Commissioners*—GENTLEMEN: On behalf of the New York County Democracy Organization, which is now, and for years has been, accorded by the Democratic party of the state in convention assembled the one-half of the entire representation in convention and state committee of the Democracy of the state of New York, the undersigned states to your honorable body that the duty imposed upon it of appointing inspectors and other officers of election from the body of the Democratic party in this city must, by the terms of the law, be performed on or about the 30th day of September. That the County Democracy has within the past month, as has been the practice for more than ten years past, furnished to your body the names of its proponees for the inspectorships and other election officers. That the time for making appointments is rapidly diminishing, and that none has been made. We have been informed by a committee appointed from our organization for the purpose of seeking information upon the subject that certain members of your honorable board have stated that the distribution of appointments of Democratic election officers had not been determined upon, nor had the time been fixed when the appointment of such officers would be made. To the end that all this uncertainty on this subject would be avoided, with a view of ascertaining the time at which you propose making such appointments, and whether or not your body purposes adhering to the precedent uniformly followed by your body in the past, and pursuant thereto appointing their proper share from the body of the County Democracy, that organization respectfully requests you—*First*, to appoint from its body the one-half of the Democratic inspectors and other election officers throughout the city, and, *second*, that you inform it through the undersigned, its chairman, at the earliest possible moment, of the day on which you purpose taking action on such appointments, that we may so shape our course as to preserve our rights and those of the public in the premises. It is respectfully pointed out to your honorable body that your reply, to be effectual, should be received at least two days prior to the time at which you purpose acting.

　　"'Respectfully yours,　　　　　　C. C. BALDWIN,
　　　　　　"'Chairman of the New York County Democracy.'

"*Thirteenth.* On said day said police board laid said communication upon the table and has taken no action thereupon.

"*Fourteenth.* Since said date said police commissioners have appointed two election inspectors in each election district in said city from the members of the Republican party.

"*Fifteenth.* Said members are about to appoint the remaining election inspectors and other election officers from alleged members of the Democratic party in said city, who are not members of the same County Democracy.

"*Sixteenth.* Upon information and belief that said Voorhis claims that one-half of said Democratic election inspectors for each election district should be appointed from the so-called 'Voorhis Democracy,' an alleged Democratic political organization, which at the last state election had no existence; and that said police commissioners are about to appoint one-half of said Democratic election inspectors for each election district from Tammany Hall, and the remainder from said Voorhis Democracy, excluding the County Democracy from consideration, upon information and belief that the so-called 'Voorhis Democracy' has the intention of supporting the county ticket of Tammany Hall at the election of 1890.

"*Seventeenth.* By their action, as aforesaid, said police board has refused to recognize the County Democracy in the appointment of inspectors of election in the city and county of New York for the year 1890.

"Whereupon your petitioners pray that a peremptory *mandamus* issue from this court directed to the said Charles F. McLean, James J. Martin, John McClave, and John R. Voorhis, both individually and as police com-

missioners of the city of New York, directing them to appoint from the members of the County Democracy one inspector of elections for the year 1890 for each election district; or, in the alternative, directing them to recognize the members of the County Democracy as members of the Democratic party, and, as such, entitled to consideration in each election district in said city in the selection and appointment of inspectors of election and other election officers for the year 1890; and that meanwhile, and until said direction has been complied with, that said respondents, both individually and as police commissioners and as a police board, be enjoined from appointing any inspectors of election in said city, unless they at the same time appoint one member of the County Democracy such an inspector for each election district in said city; and for such other and further relief in the premises as may be just, including costs; and your petitioners will ever pray, etc.

"*New York, September* 29, 1890."

The amendment of 1887, referred to in the opinion below, is Laws 1887, c. 490, § 1, which provides as follows:

"Section 1850 of chapter 410 of the Laws of 1882, entitled 'An act to consolidate into one act, and to declare the special and local laws affecting public interests in the city of New York,' is hereby amended so as to read as follows: 'Sec. 1850. All inspectors of election and poll-clerks in the city and county of New York shall hereafter be selected and appointed by the board of police, who shall also have power to make all necessary removals and transfers, and fill all vacancies which may from any cause arise. It shall be the duty of said board of police, annually, in the months of August and September in each succeeding year, for each election district in said city and county to select to serve as inspectors of election four persons (two of whom, on state issues, shall be of different political faith and opinion from their associates, and those appointed to represent the party in political minority on state issues in the said city and county to be named solely by such commissioner or such of the commissioners of police in said board as are the representatives of such political minority. And if at the next preceding municipal election any political party or organization shall have cast for its candidate for any office as many as fifty thousand votes or upwards, and the said board of police shall determine that said political party or organization is not entitled to the appointment of at least one of such inspectors in each election district to represent it, then it shall be the duty of said board of police to appoint for each election district of said city and county one further and additional inspector of election of the political faith or opinion of said political party, and an enrolled member of the organization thereof; and the inspectors of election appointed to represent said political party or organization shall be appointed solely by such commissioner or such of the commissioners of police in said board as the chairman and secretary of the organization of said political party in said city shall designate.) All persons so appointed shall be citizens of the United States and of the state of New York, of good character, and able to read, write, and speak the English language understandingly, qualified voters in said city and county, and not candidates for any office to be voted for by the electors of the district for which they shall be selected. But no person shall be required to be a resident or voter in the election district for which he shall be appointed an inspector. The persons so selected shall be notified, examined as to their qualifications, and, if approved, shall each take and subscribe before the chief of the bureau of elections, or the chief clerk thereof, within twenty days from the notice of appointment, the following oath of office: "I, ———— ————, residing at number ———— in the city of New York, do solemnly swear (or affirm) that I will support the constitution of the United States and of the state of New York, and that I will faithfully discharge the duties of the office of the inspector of elections for the ———— election district of the ———— assembly district of the city of New York, according to the best of

my ability; and that I am a citizen of the United States and of the state of New York, a qualified voter in the city and county of New York, and not a candidate for any office to be voted for by the electors of the district for which I am appointed an inspector." Whoever shall be nominated, approved, or sworn into office as an inspector of election shall receive a certificate of appointment from the board of police, said certificate to be in such form as shall be prescribed by the said board, and to specify the assembly and election districts in and for which the person to whom the same is issued is appointed to serve, and the date of expiration of his term of office. The inspectors of election appointed under the provision of this chapter shall hold office one year, unless sooner removed for want of the requisite qualifications, or for cause, in either of which cases such removal, unless made while the inspector is actually on duty on a day of registration, revision of registration, or election, and for improper conduct as an election officer, shall only be made after notice in writing to the officer sought to be removed, which notice shall set forth clearly and distinctly the reason for his removal: provided, that any inspector of election who shall at any time be appointed to fill a vacancy (which fact shall be stated in his certificate of appointment) shall hold office only during the unexpired term of his predecessor; and that no inspector of elections or poll-clerk shall be transferred from one election district to another after he has entered upon the performance of his duties.' "

*Roger Foster* and *Chas. A. Jackson,* (*Foster & Ackley,* attorneys,) for relators. *W. Bourke Cockran* and *William H. Clark,* for respondents.

LAWRENCE, J. The object of the act of 1882 was to secure to each of the political parties of the state differing on state issues one-half of the number of inspectors to be appointed in each election district. The only way in which it can be determined whether an organization belongs to either of the political parties is by ascertaining whether that organization has been recognized as such by the state committee and state convention of that party. It appears from the moving papers, and has not been denied, that the organization called the "New York County Democracy" has been accorded, for several years past, one-half of the entire representation in the conventions, and is even now so represented in the state committee of the Democracy of the state of New York. The amendment to the law in 1887, allowing a fifth inspector to be appointed, only applies to cases in which any political party or organization has cast for its candidate for any office as many as 50,000 votes or upwards at the next preceding municipal election, and such organization was not entitled to representation under the former act. · The third Democratic organization, which has been referred to upon the argument in this matter, has never cast any votes, nor entered as an organization into any canvass or election, or shown that it represents any Democratic voters. I think, therefore, that the principles enunciated by the general term of this department in *People* v. *Wheeler,* 18 Hun, 540, at page 550, require me to grant the *mandamus* applied for, directing that one-half of the inspectors be selected by the County Democracy. In the opinion in that case the court very clearly states that, if improper appointments be made, the court could not interfere by any summary process. Let a writ be issued in accordance with these views.